IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| STACY DENEVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:18-CV-487-JB-B |
| | ) | |
| DSLD HOMES GULF COAST, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter is before the Court on Defendant DSLD Homes Gulf Coast, LLC's Motion for Summary Judgment (Doc. 33), Plaintiff's Response in Opposition (Doc. 37), Defendant's Reply (Doc. 40), Defendant's Supplemental Brief in Support of Summary Judgment (Doc. 48) and Plaintiff's Supplement in Opposition (Doc. 49).  The Court heard oral argument from the parties on May 22, 2020 and ordered the supplemental briefing.  The Motions are ripe for review.  After careful consideration of the parties' briefs and arguments, the Court finds Defendant's Motion for Summary Judgment (Doc. 33) is due to be GRANTED.

## I.     BACKGROUND

Plaintiff filed an EEOC charge alleging that Defendant terminated his employment because of his age (62), alleged disability, and in retaliation for allegedly requesting a reasonable accommodation on October 30, 2017.  (Doc. 1-1, PageID.19).  Defendant responded to the charge, denying Plaintiff's allegations and explaining numerous performance issues that were the actual reasons for terminating Plaintiff's employment.  The EEOC was "unable to conclude that

the information obtained establishes violation of the statutes", dismissed the charge and issued a notice of right to sue. (*See* Doc. 1-1, PageID.22).

Plaintiff filed this lawsuit on November 20, 2018.  (Doc. 1-1).  Plaintiff asserts five causes of action in his Complaint: (1) failure to accommodate Plaintiff's requests for time off to attend medical appointments in violation of the Americans with Disabilities Act ("ADA"); (2) termination because of an actual disability; (3) retaliation for requesting a reasonable accommodation; (4) termination because of age in violation of the Age Discrimination in Employment Act ("ADEA"); and (5) retaliatory discharge in violation of the Alabama Workers' Compensation Act, Ala. Code § 25-5-11.1 ("Alabama WCA").  (Doc. 1-1).  Written discovery was exchanged and the depositions of Plaintiff, DSLD Area Manager Reid Hill ("Hill"), DSLD Chief Operating Officer and Rule 30(b)(6) representative Lee Foster ("Foster"), and DSLD customer care coordinator Dianne Overby ("Overby") were taken.

## II.    FINDINGS OF FACT

Defendant is a residential home builder.  Defendant hired Plaintiff on September 1, 2015, as a quality control and warranty technician.  (Doc. 37, PageID.445).  In his quality control role, Plaintiff identified and remedied incomplete or inadequate construction before the Defendant turned over homes to customers.  (*Id*.).  In his warranty role, Plaintiff completed periodic warranty inspections and repair work once the customer took possession of and was living in a home.  (*Id*.)  Hill was Plaintiff's immediate supervisor and was primarily responsible for supervising Plaintiff's job assignments and work performance.  (*Id*.).

On August 5, 2016, while conducting an inspection in an attic, Plaintiff suffered an injury to his left hip.  (*Id*. at PageID.445).  On August 11, 2016, Plaintiff filed a Worker's Compensation

claim for this injury. (*Id.*). While Plaintiff's physician initially restricted him from climbing, kneeling, and stooping, he was released from those conditions on September 9, 2016. (*Id.* at PageID.446). Defendant was aware of this injury and the restrictions imposed upon Plaintiff. (*Id.*).

On May 31, 2017, Plaintiff injured himself a second time while working for Defendant. (*Id.* at PageID.446). On this occasion, Plaintiff contends he lost his balance, and fell on his left side. (*Id.*). Plaintiff called and left a voicemail for Hill, informing him of the incident and letting him know he was sore. (*Id.*). Plaintiff asked Hill to call him back to discuss the injury. (*Id.*). Plaintiff continued to feel pain in his left hip and walked with a visible limp. (*Id.*). Plaintiff did not file a worker's compensation claim concerning this injury but did eventually seek medical treatment from a chiropractor. (*Id.* at PageID.446). Plaintiff received a shot for the pain and two MRIs were performed for his chiropractor to view the injury. (*Id.*).

In mid-June 2017, roughly two weeks after Plaintiff's second fall on the job, Defendant interviewed Tanner Barnes ("Barnes"), age 25, for the QC Tech position. (Doc. 37, PageID.447). At the end of July 2017, approximately one month before Plaintiff's termination, Defendant hired Tanner Barnes. (*Id.*). When Barnes started working, Plaintiff was re-assigned to assist construction superintendents with completion of punch list work on projects. (Doc. 33, PageID.136). Barnes was terminated on March 4, 2019, because of concerns relating to poor performance. (Doc. 33-18, PageID.436 – 437).

Defendant terminated Plaintiff's employment on August 30, 2017. (Doc. 37, PageID.447). During Plaintiff's employment with Defendant, he received no formal discipline regarding his

work performance. (*Id.* at PageID.446). Plaintiff was 61 years old the day he was fired. (*Id.* at 447).

III.    **STANDARD OF REVIEW**

Summary judgment shall be granted if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in [his] favor." *ThyssenKrupp Steel USA, LLC v. United Forming, Inc.*, 926 F. Supp. 2d 1286, 1290 (S.D. Ala. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (U.S. 1986)). Nevertheless, if

the nonmoving party fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

## IV. PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIM FAILS BECAUSE HE ABANDONED IT.

In his Complaint, Plaintiff alleges Defendant failed to accommodate his disability by refusing to grant him time off work to attend medical appointments following his May 2017 injury.  (Doc. 1-1, PageID.7 – 8).  Specifically, Plaintiff contends Defendant scheduled him for assignments with full knowledge those assignments conflicted with scheduled medical appointments.  (*Id.*).

Defendant argues Plaintiff's claims fail as a matter of law because Plaintiff never requested a reasonable accommodation in connection with a disability.[1]  (*Id.* at 141 – 142).  In response to summary judgment, Plaintiff argues Defendant failed to accommodate him by delaying his treatment through non-responsiveness.  (Doc. 37, PageID.462).  Specifically, Plaintiff contends that following his second on-the-job injury, no one from Defendant responded "to [his] claimed injury" or "provided access to a workman's compensation claim, thus delaying plaintiff's treatment for the injury."  (*Id.*).  Plaintiff also asserts, he was routinely assigned tasks "outside his physical ability due to his disability."  (*Id.*).  Plaintiff's Response to Defendant's Motion for Summary Judgment represents the first time Plaintiff has made these allegations.

---

[1] Defendant also contends Plaintiff has not demonstrated he is disabled for the purposes of the ADA.  This argument will be discussed in detail below.

Plaintiff did not respond to Defendant's summary judgment argument that he never requested a reasonable accommodation for his alleged injury and as a result, this ground has been abandoned.  Defendant is entitled to summary judgment on this claim alleged in the Complaint.  *See Russell v. City of Mobile*, 2013 WL 1567372, *5 (S.D. Ala. 2013), *aff'd sub nom. Russell v. City of Mobile Police Dep't,* 552 F. App'x 905 (11th Cir. 2014) ("Russell does not address this point in her opposition brief.  [. . .] [G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") (internal citations  and quotations omitted); *Shamburger v. City of Mobile*, 2008 U.S. Dist. LEXIS 55803, at *1 (S.D. Ala. July 23, 2008) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.'") (internal citations omitted).

The Court cannot consider Plaintiff's new theory that Defendant failed to accommodate him through "non-responsiveness" because it was raised for the first time in response to summary judgment.  *See, e.g., White v. Beltram Edge Tool Supply, Inc*., 789 F.3d 1188, 1200 (11th Cir. 2015); *Gilmour v. Gates, McDonald & Co*., 382 F.3d 1312, 1315 (11th Cir. 2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a).  A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); *Parsons v. First Quality Retail Servs., LLC,* 2012 U.S. Dist. LEXIS 6823, *15 (M.D. Ga. Jan. 20, 2012) (granting Defendant's summary judgment on Plaintiff's failure to accommodate claim where it was raised for the first time in opposition to summary judgment).  Defendant is entitled to judgment as a matter of law on Plaintiff's failure to accommodate claim.

V.      **PLAINTIFF'S ADA CLAIMS**

Plaintiff's remaining ADA claims suffer from two defects.  First, Plaintiff cannot demonstrate he is disabled for the purposes of the ADA.  Second, Plaintiff cannot demonstrate he is a "qualified individual," i.e., that he is capable of performing his job's essential functions with or without a reasonable accommodation.  These defects are fatal to Plaintiff's ADA claims.

A.      **Plaintiff cannot demonstrate he is disabled.**

Defendant contends Plaintiff cannot establish a *prima facie* case of discriminatory discharge under the ADA because he cannot show he is disabled.  (Doc. 33, PageID.142).

The ADA provides, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees . . .." 42 U.S.C. § 12112(a).  "To establish a *prima facie* case for disability discrimination, a plaintiff must produce sufficient evidence to permit a jury to find that she:  (1) is disabled, (2) is a qualified individual, and (3) was discriminated against because of her disability."  *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1179 (11th Cir. 2019) (citing *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014)).  To establish he suffers from a disability, Plaintiff must prove he has:  (1) a physical or mental impairment that substantially limits one or more major life activities; and (2)  a record of such an impairment or being regarded as having such an impairment.  *See* 42 U.S.C.S. § 12102(1).  "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D).

The record suggests Plaintiff's intermittent limited mobility interfered with a major life activity – walking.  *See* 29 C.F.R. § 1630.2(I).  However, this interference did not substantially limit Plaintiff's ability to walk as required by this Circuit.  Rather, the circumstances here are similar to

those described in *Amos v. Hertz Transporting, Inc.*  There, the court found the appellant's description of a "need to change position or take a break for five minutes every forty-five to sixty minutes of continuous sitting or standing, is certainly a limitation in plaintiff's ability to walk, stand, and perform manual tasks," but was insufficient to establish a substantial limitation.  2006 U.S. Dist. LEXIS 6263, *26 (N.D. Ga. Jan. 31, 2006).

In this case, Plaintiff testified he walks with a limp, experiences infrequent and minute flare-ups, and that during these flare-ups he has to take a short break.  However, Plaintiff also testified he completed his work after taking those short breaks.  (Doc. 33-6, PageID.242, 281). This sort of limitation is not substantial enough to qualify as a disability.  *See, e.g., Goff v. Performance Contractors, Inc.,* 2020 U.S. Dist. LEXIS 61807, *14-15 (S.D. Ala. Apr. 8, 2020); *Hetherington v. Wal-Mart, Inc.*, 2012 U.S. Dist. LEXIS 80438, *48-49 (N.D. Ala. Apr. 24, 2012) (finding no record evidence to suggest plaintiff faced a substantial limitation where he could perform physical tasks despite allegations of a limp and difficulty in using his right hand); *Moore v. J.B. Hunt Transp., Inc*., 221 F.3d 944, 951 (7th Cir. 2000) (finding no substantial limitation where arthritis affected the plaintiff's pace and rate of walking, and occasional flare-ups occurred once or twice per year); *Wynn v. Whitney Holding Corp*., 220 F.Supp.2d 582, 590 (M.D. La. 2002) (citing *Talk v. Delta Airlines, Inc.,* 165 F.3d 1021, 1025 (5th Cir.1999)) (finding no substantial limitation where plaintiff only offered evidence that she experienced a "transient worsening of her gait"). Because Plaintiff failed to demonstrate he is disabled, his ADA claims fail as a matter of law.  *Goff,*

2020 U.S. Dist. LEXIS 61807, *18 (S.D. Ala. 2020) (finding plaintiff's several ADA claims failed where plaintiff could not establish he was disabled).

> **B.**      **Plaintiff cannot demonstrate he is a "qualified individual."**

In its Supplemental Brief in Support of Summary Judgment, Defendant contends Plaintiff's ADA claims also fail because Plaintiff is not a "qualified individual" under the ADA.  (Doc. 48, PageID.609).   Defendant contends Plaintiff's work performance demonstrates he could not satisfactorily perform his job's essential functions regardless of whether he received a reasonable accommodation.   (Doc. 48, PageID.610 – 611).   Moreover, Defendant contends, Plaintiff shouldered the burden of identifying a reasonable accommodation to his superiors at DSLD and failed to do so.  (*Id.* at PageID.616).

In response, Plaintiff asserts Defendant failed to properly address Plaintiff's disability in its analysis.  (Doc. 49, PageID.646).  Plaintiff also contends the precedent Defendant relies upon in support of its argument is inapplicable to this case (*Id.* at PageID.646 – 647, 652), and the documents Defendant relies upon neither demonstrate Plaintiff is not a "qualified individual," nor have any relevance to Defendant's decision to terminate him.  (*Id*. at 648 – 651).

The ADA identifies a "qualified individual" as someone with a disability who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. §12111(8).  "The burden of identifying an accommodation that would allow a qualified employee to perform the essential functions of [his] job rests with that employee, as does the ultimate burden of persuasion with respect to showing that such accommodation is reasonable."  *Goff,* 2020 U.S. Dist. LEXIS 61807*19-20 (quoting *Earl v. Mervyns*, 207 F.3d 1361, 1367 (11th Cir. 2000)).  Further, "[i]f [the] individual is

unable to perform an essential function of his job, even with an accommodation, he is, by definition, not a 'qualified individual' and, therefore, not covered under the ADA."  *Id.* at *18 (quoting *Holly,* 492 F.3d at 1256); *see also Pouncy v. Vulcan Materials Co.*, 920 F. Supp. 1566, 1582 (N.D. Ala. 1996).

When considering whether a job function is essential, the ADA provides, "if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job."  42 U.S.C. § 12111(8).  Courts are encouraged to consider the following evidence when determining whether a particular job function is essential:

> (i) The employer's judgment as to which functions are essential;
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
> (iii) The amount of time spent on the job performing the function;
> (iv) The consequences of not requiring the incumbent to perform the function;
> (v) The terms of a collective bargaining agreement;
> (vi) The work experience of past incumbents in the job; and/or
> (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. §1630.2(n)(3)(i) – (vii).

Assuming *arguendo* Plaintiff is disabled, he cannot demonstrate he performed the essential functions of his QC Tech position, his Warranty / Customer Care tech position, or the specifically created "punch-out" position without a reasonable accommodation.  Instead, the record demonstrates Plaintiff's on-the-job performance was questioned as early as October 4, 2015[2], regarding performance as a QC Tech.  (Doc. 33-2, PageID.149).

_____

[2] This was about one month after Plaintiff was hired.

1.      **Plaintiff's QC Tech Performance**

According to the record, Defendant considered a QC Technician's essential functions to

include:[3]

> [Taking] charge of internal quality control inspections to ensure
> adherence to company quality standards for all mechanical,
> electrical, structural and finish trades;
> Act[ing] as an internal customer prior to the homeowner
> orientation to ensure high levels of quality are delivered to our
> customers;
> Must be self motivated; and
> Must possess a high level or organization skills and acute attention
> to detail.

(Doc. 33-7) (capitalization in original).    Plaintiff contends Defendant's position on his

shortcomings in the QC role are unfounded because "[Defendant] has put forth no evidence he

failed to [demonstrate he was incapable of performing the job's essential functions] other than

a single disputed email . . ." (Doc.49, PageID.649).  The record belies this contention.  Plaintiff's

failure to meet the position's attentiveness to detail and highly organized requirement became

apparent just over a month after he was hired.  (Doc. 33-2, PageID.149).  Similarly, when Hill

conducted a "walk through" on homes Plaintiff inspected, he noticed Plaintiff failed to "tape the

house," an essential function of the job, indicating where repair work was required.  (Doc. 48-3,

PageID.641 – 643).  Similarly, to the extent Plaintiff characterizes Defendant's position on

Plaintiff's QC performance as "vague," (Doc. 49, PageID.649 – 650), that criticism rings hollow.

---

[3] Plaintiff does not dispute Defendant's characterization of these essential functions (or those of a Warranty
Technician) in their Opposition or Supplement.

The QC Technician's essential functions involved conceptual ideas – to be attentive and detail-oriented.  Defendant's assessment of Plaintiff's work relates specifically to those characteristics.

Though more properly asserted as evidence of pretext, Plaintiff argues he was never "counseled" or "disciplined" for these infractions, and because he was never "counseled" or "disciplined," he satisfied the essential functions of his job commensurate with Defendant's expectations.  Because the record is inconsistent through silence, Plaintiff contends, the Court should discount Defendant's articulated reasons for Plaintiff's termination.  The record, when viewed in a light most favorable to Plaintiff, shows this is not the case.  Besides the evidence cited above, Plaintiff received additional training in response to his on-the-job shortcomings in the QC role (as well as the Warranty Tech role).  (Doc. 33-4, PageID.208).  This remedial training is indicia of poor work performance.  *See, e.g., Nettles v. Daphne Utils.*, 2015 U.S. Dist. LEXIS 36574, *33 (S.D. Ala. March 24, 2015) (identifying "coaching" as indicia of poor work performance); *see also Hockenjos v. Metro. Transporation Auth.*, 2016 U.S. Dist. LEXIS 65341 (S.D.N.Y. May 18, 2016) (granting summary judgment on plaintiff's FMLA claim where remedial training did not cure plaintiff's poor performance); *Kennedy v. AMTRAK*, 139 F. Supp. 3d 48, 63 (D. D.C. 2015) (granting summary judgment on plaintiff's discrimination claim where poor work performance and remedial training eliminated any dispute of material fact).[4]

---

[4] Plaintiff takes issue with several exhibits Defendant included in its Supplemental Brief.  (Doc. 49, PageID.651). Plaintiff also contests several exhibits which Defendant sought leave to file in support of its Motion for Summary Judgment.  The Court finds it unnecessary to rely upon those exhibits. The record, without them, sufficiently demonstrates Plaintiff's poor work performance.

### 2.      Plaintiff's Warranty Tech Performance

According to the record, Defendant considered Warranty/Customer Care Technicians' essential functions to include: "Document items needing repair during scheduled inspections . . . Ensure all warranty service requests are complete within ten (10) days . . . Strong organizational skills and ability to multi-task and prioritize in a fast-paced environment." (Doc. 33-9) (capitalization in original).

Plaintiff has failed to demonstrate a material factual dispute to support his contention that he satisfactorily performed the essential functions required in his Warranty Tech role. Plaintiff insists that because Hill did not receive the "vast majority" of emails regarding Plaintiff's performance, such evidence should be discounted in the Court's summary judgment calculation. Plaintiff's contentions here are futile.   Notwithstanding that such an argument is more appropriate at the "pretext" stage of the *McDonnell Douglas* analysis, Plaintiff fails to address the instances where Hill received information on Plaintiff's failings in this role.  (*See* Doc. 33-2, PageID.149, 159, 162, 165, 169 – 172, 183 – 185, 189).  The record demonstrates Plaintiff knew he repeatedly failed to satisfy essential functions of this position, including replying to all warranty service requests within ten (10) days.  (*Id.* at PageID.157, 161, 164, 168, 176, 178, 183 – 185, 189, 191).

### 3.      Plaintiff's "Punch-Out" Performance

Plaintiff does not appear to rebut Defendant's contentions about his failures to perform the essential functions of his punch-out position.  The result is any such argument is abandoned. *Martinez v. Ryan*, 2016 U.S. Dist. LEXIS 43577, at *54 (D. Ariz. Mar. 30, 2016) ("[B]y failing to address Claim 4 in his supplemental *Martinez* brief, Petitioner has further abandoned the

claim."); *Holland v. McDonald*, 2007 U.S. Dist. LEXIS 116563, at *27 n.5 (N.D. Ala. Nov. 28, 2007)

(citing *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1284-85 (11th Cir. 2003) ("The

court notes that Holland failed to address Count VI in either his brief in opposition to the

defendants' motions for summary judgment or in his supplemental brief in opposition to the

defendants' motions for summary judgment (docs. 61 & 63).  While the law is clear that Holland

cannot proceed with Count VI against COH and the defendant officers, the court also finds that

Holland abandoned Count VI by not addressing it in either of his responses."); *McIntyre v. Eckerd

Corp.*, 2007 U.S. Dist. LEXIS 15806, at *14-16 (N.D. Ga. Mar. 2, 2007).

### 4.    Conclusion

Finally, to the extent Plaintiff argues he was taking on "two jobs" at once when he

performed his QC Tech and his Warranty Tech duties, such a policy was in-place at DSLD when

he was hired, he knew these requirements, and accepted them when he took his position.  (Doc.

33-4, PageID.204 – 206; Doc. 33-6, PageID.235).  He may not "'second guess the employer or . . .

require [it] to lower company standards" especially when the position's specifications were "job-

related, uniformly enforced, and consistent with business necessity[.]"  *Nguyen v. City & Cty. of

Denver*, 286 F. Supp. 3d 1168, 1183 (D. Colo. 2017) (citing *Hennagir v. Utah Dep't of Corr.*, 587

F.3d 1255, 1262 (10th Cir. 2009)).

As Plaintiff cannot demonstrate he could perform the essential functions of his job

without a reasonable accommodation, "[t]he critical question for purposes of the 'qualified

individual' analysis thus becomes whether [Plaintiff] could perform the essential functions" of his

job with a reasonable accommodation.  *Goff*, 2020 U.S. Dist. LEXIS 61807 at *19.  As noted above,

the burden of identifying such an accommodation and demonstrating its reasonableness rests on

Plaintiff's shoulders.  *Id.*  During his deposition, Plaintiff stated he never told Hill or anyone at DSLD he required an accommodation or that he physically could not perform the tasks assigned to him.  (Doc. 33-6, PageID.242).  Further, Plaintiff failed to properly identify a reasonable accommodation in his Opposition.  *See Section* IV, *supra.*  Because Plaintiff can identify no reasonable accommodation that would have enabled him to perform the essential functions of his positions, he cannot show he is a "qualified individual" and his ADA claims fail.  *Goff* at *20.

### C.    Plaintiff's ADEA claim fails because he cannot show Defendant's reasons for termination were pretextual

Defendant contends summary judgment is appropriate on Plaintiff's ADEA claim because this claim cannot survive the *McDonnell Douglas* burden-shifting framework. (Doc. 33, PageID.142).  Specifically, Defendant argues Plaintiff can provide no evidence to show Defendant's reasons for termination are pretextual.  (Doc. 33, PageID.143 – 144).  Plaintiff responds by asserting he demonstrated a *prima facie* case of age discrimination (Doc. 37, PageID.464–465) and the "vast majority of evidence presented concerning Plaintiff's performance" is based on "after-the-fact justifications." (*Id.*).  Plaintiff also argues his supervisor's testimony regarding the reasons for termination was "vague," and this vagueness is consistent with the *post hoc* justifications for his firing.  (Doc. 37, PageID.468).  In reply, Defendant contends Plaintiff has "mischaracterize[d] and apparently misunderst[ood] the significance" of the emails Defendant offered to support its motion and Plaintiff cannot show his age was the "but for" cause of his termination.

The ADEA prohibits an employer from discharging, or otherwise discriminating against, an employee because of his age if the employee is at least 40 years old.  *See* 29 U.S.C. §§ 623(a)(1), 631(a).  This class of cases are subject to the *McDonnell-Douglas* burden-shifting analysis if the

plaintiff's evidence is circumstantial. *Sims v. MVM, Inc.,* 704 F.3d 1327, 1331–33 (11th Cir. 2013). To prove an ADEA claim by circumstantial evidence, a plaintiff must first establish a *prima facie* case of discrimination. A plaintiff can establish a *prima facie* case for an ADEA violation by showing "he (1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual." *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000); *see also Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207–08 (11th Cir.1997).

The Court finds Plaintiff presented a *prima facie* case of age discrimination. Plaintiff was over forty (40) years old when Defendant hired him (Doc. 33-12); Defendant terminated his employment on August 31, 2017 (Doc. 33-17); he was qualified for his job; and he was eventually replaced by Tanner Barnes, a significantly younger employee. (Doc. 33-18, PageID.435).

Under *McDonald Douglas*, the burden shifts to Defendant to produce legitimate non-discriminatory reasons. Defendant relies, largely, on the evidence discussed in Section V(B)(2), *supra*, demonstrating Plaintiff's poor work performance to show his termination was not a consequence of pretext. Poor work performance is legitimate reason for discharge. *See Davis v. Cottage Hill Baptist Church*, 1995 U.S. Dist. LEXIS 13288, at *17 (S.D. Ala. Aug. 29, 1995) (finding the plaintiff's poor job performance and previous insubordination legitimate, non-discriminatory reasons for termination); *EEOC v. Kloster Cruise*, 897 F. Supp. 1422, 1424 (S.D. Fla. 1995); *Kotas v. Waterman Broad.,* 927 F. Supp. 1547, 1549 (M.D. Fla. 1996) (finding an employer's good faith belief that an employee's performance is unsatisfactory constitutes a legitimate nondiscriminatory reason for termination in an Age Discrimination in Employment Act claim); *Brown v. PSC Indus. Outsourcing, LP*, 2013 U.S. Dist. LEXIS 1189, *34 (N.D. Ala. Jan. 4, 2013)

(finding poor job performance as a legitimate reason for termination).   Thus, the onus is on Plaintiff "to establish that an employer's asserted reason was pretextual, . . . [that] both [ ] the stated reason was false and that discrimination was the real reason" for his termination. *Giraldo v. Miami Dade Coll.,* 739 F. App'x 572, 574 (11th Cir. 2018).

Plaintiff has not shown Defendant's decision to terminate him for poor on the job performance was mere pretext.  Plaintiff relies heavily on the assertion that Hill did not personally receive all the emails concerning Plaintiff's poor work performance as evidence of pretext.  This point ignores the emails Hill actually received showing Plaintiff was failing to meet performance expectations.   Likewise, the "vagueness" Plaintiff references does nothing to show that Defendant's proffered reasons are false or mere pretext.  Indeed, Plaintiff does not address or suggest any falsity regarding the contents in the emails Hill received regarding Plaintiff's poor job performance; nor does he attempt to rebut Foster's testimony regarding the homes he viewed that were assigned to Plaintiff. (*See* Doc. 33-4, PageID.203).

Plaintiff also relies on Tanner Barnes' age as evidence of pretext.  Plaintiff's argument is weakened because Barnes was terminated for the same reasons as Plaintiff, *i.e.* poor performance.  (*See e.g.,* Doc. 33-18).  Thus, Plaintiff's attempts to refute Defendant's reasons for his termination are unsuccessful and Defendant is entitled to judgment as a matter of law on this claim.  *See, e.g., Giraldo v. Miami Dade Coll*., 739 F. App'x 572, 575 (11th Cir. 2018) (finding no pretext where the only circumstantial evidence of discrimination plaintiff offered was that three

people hired in lieu of him were younger, had no disabilities, and the interviewer asked how the plaintiff handled people in his same age range.).

## VI.  PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF RETALIATORY DISCHARGE

In his final claim, Plaintiff alleges he was subjected to retaliatory discharge prohibited by the AWCA.  Defendant argues it is due summary judgment on this claim because Plaintiff cannot establish a *prima facie* case of retaliatory discharge.  Specifically, Defendant argues the workers' compensation claim Plaintiff *actually* made was too remote to be connected to an instance of retaliatory discharge.  Defendant contends, and Plaintiff does not dispute, he never filed a second workers' compensation claim concerning his alleged second injury.  Defendant argues Alabama law does not permit "possible" workers' compensation claims to serve as the basis for a retaliatory discharge claim.  (Doc. 33, PageID.145).  In response, Plaintiff argues he met the criteria to establish a *prima facie* workers' compensation claim despite the "temporal[ ] distan[ce]" between his workers' compensation claim in August 2016 and his termination on August 30, 2017.  (Doc. 37, PageID.471 – 472).  Plaintiff cites no authority supporting his position that a prospective workers' compensation claims can serve as the basis for a retaliatory discharge claim.

A *prima facie* claim for retaliatory discharge under the Alabama Workers' Compensation Act[5] requires a plaintiff to show: (1) an employment relationship, (2) an on-the-job injury, (3) knowledge on the part of the employer of the on-the-job injury, and (4) subsequent termination of employment <u>based solely upon the employee's on-the-job injury and filing a workers'</u>

---

[5] Ala. Code § 25-5-11.1

compensation claim.  *Staples v. H. Walker Enters., LLC*, 2019 U.S. Dist. LEXIS 122939, *14 (N.D. Ala. 2019) (emphasis added).  Although the "proximity in time between the filing of the workers' compensation claim and discharge" may be "a persuasive factor in establishing a causal connection," *Sparks v. Sunshine Mills, Inc*, 2013 U.S. Dist. LEXIS 125756, *20-21 (N.D. Ala. 2013), the mere possibility of a workers' compensation claim will not support a *prima facie* case of retaliatory discharge.  *Falls v. JVC Am., Inc*., 7 So. 3d 986, 990 (Ala. 2008).  Further, "if there is uncontradicted evidence of an independently sufficient basis for the discharge then the defendant is entitled to a judgment as a matter of law." *Sparks*, 2013 U.S. Dist. LEXIS 125756, at *20-21.  Absent a showing of pretext, an employer's stated legitimate reason for discharge precludes any genuine issues of material fact.  *Id.*

Plaintiff cannot establish the elements necessary to carry his claim.  The record shows Defendant employed Plaintiff (Doc. 33-12), Plaintiff suffered two on-the-job injuries that his supervisor knew about (Doc. 33-5, PageID.221 – 222), and Plaintiff filed one workers' compensation claim on August 11, 2016.  (Doc. 37-4, PageID.525)  All that said, Plaintiff cannot demonstrate a genuine issue of material fact that he was terminated for filing a workers' compensation claim.  Plaintiff insists he satisfied this element because he filed a workers' compensation claim in 2016, and had a prospective claim following his injury in May of 2017.  (Doc. 37, PageID.472) ("Since Plaintiff's claim here relates to retaliation for the reporting of two on-the-job injuries, as well as the filing of one workers' compensation claim, the cause of Plaintiff's termination did occur within three months of the discharge and he has met every element of the offense.").

As to Plaintiff's reliance on his workers' compensation claim from August of 2016, it is his burden to demonstrate "by substantial evidence, a direct and distinct causal link between one having knowledge of the plaintiff's workers' compensation claim and the termination." *Coca-Cola Bottling Co. Consol. v. Hollander*, 885 So. 2d 125, 130 (Ala. 2003). Such a causal connection requires the temporal proximity between the workers' compensation claim and termination to be "very close." *Sparks,* 2013 U.S. Dist. LEXIS 125756, at *31-32 ("[c]lose temporal proximity between the claim and the termination must be so coincidental as to raise an inference that the claim caused the termination."). Here, there is no close temporal proximity linking Plaintiff's *actual* claim for workers' compensation benefits in August 2016 and his termination in August of 2017.

Plaintiff's second theory, that he established a *prima face* case by way of his potential workers' compensation claim due to his May 2017 injury, is foreclosed by Alabama law. *See Falls*, 7 So. 3d 986 at 990–91. In *Falls*, the Alabama Supreme Court stated:

> If the Legislature desires to expand § 25–5–11.1 so that a retaliatory discharge would include terminations of employment in anticipation of workers' compensation claims, it may do so by amending the statute. Unless and until the Legislature does so, however, we must interpret the statute as written. Because the statute uses the verb phrase "has instituted or maintained" in relation to an action to recover worker's compensation benefits, it is clear that § 25–5–11.1 contemplates an action for a termination of employment in retaliation against an event, *i.e.,* the filing of a worker's compensation claim, that has already occurred.

7 So. 3d at 990-91. Because Alabama law forecloses the possibility of a retaliatory discharge claim based on a prospective worker's compensation claim, Defendant is entitled to judgment as a matter of law.

Even if Plaintiff could state a *prima facie* case for retaliatory discharge, he could not overcome Defendant's legitimate reasons for his termination. As noted above, the record

reflects Plaintiff was discharged for poor job performance.  Plaintiff proffered circumstantial evidence fails to create a genuine issue of fact that the stated basis has been applied in a discriminatory manner to employees who have filed workers' compensation claims or the other criteria outlined in *Sparks.*   Instead, the opposite is true.   One of Plaintiff's co-employee's, Murdoch, another man over forty (40) years old, filed workers' compensation claims and was not discharged.  (Doc. 33-5 at ¶ 5).  Further, as noted above, Plaintiff's replacement was discharged for the same reasons Plaintiff was terminated.  (Doc. 33-18, PageID.436 – 437).  Based on the foregoing, Defendant is entitled to judgment as a matter of law on Plaintiff's retaliatory discharge claim.

## CONCLUSION

The Court finds that there are no genuine issues of material fact and that Defendant DSLD is entitled to judgment as a matter of law on each of Plaintiff's claims.  Defendant's Motion for Summary Judgment is **GRANTED**.

**DONE and ORDERED** this 14th day of September, 2020.

/s/ JEFFREY U. BEAVERSTOCK_____
UNITED STATES DISTRICT JUDGE